# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| CHARLES JENKINS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 06-CV-603-WDS |
| PRICE WATERHOUSE LONG TERM DISABILITY PLAN, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, PRICEWATERHOUSECOOPERS, LLP | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court are cross-motions for summary judgment (Docs. 48, 50, 53) and related motions to stay and to strike (Docs. 56, 59). The parties have filed responses to the cross motions (Docs. 61, 62, 63) and replies (Docs. 67, 69). The Court notes that plaintiff has filed responses to the defendants' motions for summary judgment, although he contends that he needed additional time to respond to PricewaterhouseCoopers's ("PwC") motion, in light of the time that has passed, and the lack of a supplement to the motion, the Court **DENIES** plaintiff's motion to stay. (Doc. 56).

## BACKGROUND

Plaintiff, a resident of Maryville, Illinois, was employed as a Senior Accounting Consultant for defendant PwC from 1989 to December 1993. At the end of 1993, plaintiff was forced to cease working for the defendant when he developed symptoms of the Human Immunodeficiency Virus ("HIV"). These symptoms included: "extreme fatigue, lower extremity neuropathy, decreased sensation in fingers, bilateral manual dexterity limitations, and other

opportunistic infections including condylomata, mysitis and allergic rhinitis." (Amended Complaint, Doc. 25).

Plaintiff then made a claim for benefits under defendant's Long Term Disability Plan (LTD). The LTD plan was underwritten by the Connecticut General Life Insurance Company (CGLIC), under policy No. 0303220, the plan administrator. Upon demonstrating that he was eligible for the LTD benefits by submitting various medical records and reports, it was determined that plaintiff was entitled to benefits of $2,550 per month.

From June 1994 to January 2006, the LTD paid plaintiff in full the $1,389 per month owed to him pursuant to the LTD plan's terms. Plaintiff claims that on January 5, 2006, the LTD ceased making payments to him. In addition, on August 1, 2006, he was terminated as an employee by defendant PwC and thus lost all benefit related to his employment with the defendant. Plaintiff also claims that after his termination he submitted to CGLIC multiple records and reports objectively indicating his inability to work. Notwithstanding these submissions, CGLIC and LTD did not reinstate his benefits or his employment.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

The parties have filed cross motions for summary judgment. Plaintiff seeks partial summary judgment seeking judgment against LTD and against Connecticut General Life CGLIC under Group Policy No. 0303220, while his claim against PwC remains to be determined (Doc. 48). Defendants LTD and CGLIC have not only filed an opposition to that motion (Doc. 61), but have also filed a cross motion for judgment based on the administrative record (Doc. 50). Defendant PwC has filed its own motion for summary judgment and plaintiff has filed a joint response to these motions. (Doc. 63).

**A.    LTD and CGLIC's Motion for Summary Judgment**

1.    Plaintiff's Medical Review History

The record in this case is relatively simple, given that it involves a complicated medical claim. Plaintiff, who suffers from HIV, received benefits from the defendants for a period from 1994, after his diagnosis, until 2006. Defendants LTD and CGLIC assert that the termination of benefits was based upon its determination, after re-evaluations of the plaintiff in 2004-2006 that the plaintiff could obtain work, and therefore was no longer eligible for disability benefits.

The record reveals that after June of 1999, in order to continue to qualify for benefits, plaintiff had to submit evidence that he was unable to perform duties of any occupation for which he was or may reasonably have become qualified. This would take into account his education, training and experience (Administrative Record 863). In 2004, plaintiff was examined by Dr. Scott Taylor, who reviewed plaintiff's medical records and conferred with plaintiff's primary care physician, Dr. Prelutsky. Dr. Taylor concluded that it was possible, based on the medical records, for plaintiff to return to work (Admin. R. At 1062). In January of 2005, Dr. Barry Kerns determined, after reviewing plaintiff's medical records and conferring with Dr. Prelutsky, that plaintiff's HIV condition did not prevent him from performing light duty or sedentary work (Admin. R. At 989-993).

In June of 2005, Dr. Karen Shockley conducted an independent medical examination of the plaintiff. During that examination, plaintiff, himself, stated to her that he believed he could work an eight hour day (Admin. R. 399), and Dr. Shockley concluded that plaintiff could work an eight hour day of sedentary work, but over a forty hour workweek would require frequent work breaks or work absences (Admin R. 399).

In August of 2005, plaintiff underwent a Functional Capacities Examination, administered by Kathleen Schmidt, physical therapist, who concluded that the plaintiff could work a medium level job at a normal 8 hour day, 40 hours per week. (Admin. R. 389-90).

In September of 2005, Dr. Shockley performed a Physical Ability Assessment test on plaintiff and concluded that he could sit continuously, more than 5.5 hours per day, as well as stand and walk frequently, 2.5 to 5.5 hours per day. She determined that he was without limitations as to basic functions of hearing, seeing, smelling, kneeling, crouching, fine manipulations, and grasping and simple grasping. He could lift and carry up to 20 lbs, and she determined that he could perform sedentary activity. (Admin. R. 422-23).

In October of 2005, plaintiff was given a list of positions that met his skill level, education, work history and wage replacement requirements, known as a "Transferable Skills Analysis," taking into account his Physical Ability Test results and the Functional Capacities Examination test results.

In January of 2006, plaintiff's records were reviewed by Dr. Kern, who determined that plaintiff has a condition that was progressive and deteriorating, but that he could perform a sedentary job for 8 hours a day, 40 hours a week. Plaintiff was sent a letter notifying him that he would no longer receive benefits after January 31, 2006, and in April of 2006, plaintiff filed an appeal of this determination. The appeal was reviewed by Dr. Marie Hatam and Kay Rhodes, RN, who determined that plaintiff could work at a sedentary level job. (Admin R. 14; 23-24; 167). The appeal was denied in July of 2006.

## 2. Standard of Review of Denial of Benefits.

In actions challenging denials of benefits under 29 USC § 1132(a)(1)(B), a district court reviews decisions of plan administrators de novo, except when plan gives administrator discretion to interpret plan terms or otherwise determine benefits eligibility. *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 658 (7th Cir. 2005). When the plan administrator is given broad discretion to interpret the plan and determine benefit eligibility under the terms of an employee benefit plan, the administrator's benefit decisions are reviewed under the arbitrary and capricious standard. *Dougherty v. Ind. Bell Tel. Co.*, 440 F.3d 910, 915 (7th Cir. 2006) (citing *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)). Based on such standard, this Court may uphold the decision of the administrator as long as there is "rational support in the record." *Dougherty*, 440 F.3d at 917 (*See Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004)).

Courts look to the language of a plan to determine whether the administrator has discretionary authority. *Sanders v. Unum Life Ins. Co. of Am.,* 346 F. Supp 2d 955 (N.D. Ill 2004). The question is not whether the court would have ruled in the same manner as the CGLIC, as the plan administrator, but whether determination of CGLIC was unreasonable. *Davis v. Unum Life Ins. Co. of America,* 444 F.3d 569, 575 (7th Cir. 2006). There is a deferential standard which must be applied to this type of plan review. If the plan decision offers "a reasoned explanation, based on the evidence, for a particular outcome" and the decision is "based on a reasonable explanation of relevant plan documents" or "the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of

this problem" then this Court must affirm that decision. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). Accordingly, because, CGLIC is given broad discretion to interpret the plan and determine benefit eligibility under the terms of an employee benefit plan, the Court will review benefit decisions under the arbitrary and capricious standard.

Therefore, the Court must determine whether the termination of plaintiff's benefits has a rational basis for its decision and is supported by the Administrative Record. Further, in reviewing the Administrator's decision, this Court is limited to consideration of information actually considered by the Administrator. *Killian v. Healthsouce Provident Adm'rs,* 152 F.3d 514 (6th Cir. 1998).

Plaintiff asserts that the LTD and CGLIC's determination that he was no longer entitled to benefits were erroneous on several grounds. Plaintiff notes that the defendants continued their investigation and review, yet continued to pay benefits to plaintiff after receiving the reports of Dr. Taylor and the preliminary report of Dr. Kern. Plaintiff essentially asserts, therefore, that the defendants, by paying benefits, is now estopped from ceasing to pay them. An estoppel claim under ERISA requires showing of "(1) a knowing misrepresentation; (2) that was made in writing; (3) with reasonable reliance on that misrepresentation by them; (4) to their detriment." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 636 (7th Cir. 2004); *Coker v. TWA*, 165 F.3d 579 (7th Cir. 1999). When plan documents are ambiguous or misleading, oral representations as to the meaning of the documents may be relevant. *Bowerman v. Wal-Mart Stores*, 226 F.3d 574, 588 (7th Cir. 2000). It is well settled that, "statements by plan administrators, side agreements and understandings, or even special offers made to many of a firm's employees, do not change the contents of the plan applicable to other employees." *Sandstrom v. Cultor Food Sci., Inc.*, 214

6

F.3d 795, 797 (7th Cir. 2000); (*See, e.g., Cent. States Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989) (en banc); *Frahm v. Equitable Life Assurance Society*, 137 F.3d 955, 960 (7th Cir. 1998); *Cent. States Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256 (7th Cir. 1994)). Moreover, conduct by bureaucrats implementing a plan do not act to estop the employer from enforcing the plan's written terms. (*See, e.g.*, *Shields v. Teamsters Pension Plan*, 188 F.3d 895 (7th Cir. 1999); *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 856 (7th Cir. 1997); *Schoonmaker v. Employee Sav. Plan of Amoco Corp.*, 987 F.2d 410 (7th Cir. 1993)).

Plaintiff's argument of estoppel simply is not supported by the record. Plaintiff fails to set forth any evidence of any knowing misrepresentation that was made in writing by defendants. Although the Administrator continued to pay DIR benefits to plaintiff even after inital findings by defendants' reviewing phyicians indicated that plaintiff could continue to work, such conduct, standing alone, does not rise to the level of misrepresentation by any measure. Therefore, to the extent that plaintiff raises an estoppel claim, the Court **FINDS** that claim is without merit.

Plaintiff asserts that he suffers from fatigue and that fatigue was not taken into consideration in determining plaintiff's ability to perform work. Plaintiff further attempts to discredit the review of the defendant's doctors, because defendants did not use or consult with physicians who possess expertise in the medical issue under consideration, which plaintiff qualifies as his HIV/AIDS status. Notably, the inquiry of the reviewing physicians was not whether plaintiff suffered from HIV/AIDS, but whether, given his medical condition, the plaintiff could undertake meaningful work on a normal work-week basis.

### 3. Conclusion

The Court's review of the Administrative record in this case supports the finding that not only did the defendants' doctors review the plaintiff's medical records, they also consulted with plaintiff's treating physician, Dr. Prelutsky, about plaintiff's medical condition, before determining his ability to work. Given the Court's limited review of the decisions of the plan administrator's, the Court **FINDS**, that based upon the Administrative Record, that the decision to deny plaintiff benefits was neither arbirtrary nor capricous, *Hess,* 274 F.3d at 461, and must be affirmed by this Court.

Therefore, the Court **DENIES** plaintiff's motion for partial summary judgment (Doc. 48) on all grounds. Defendants' motion to strike the declaration of Dr. DeBrofsky attached to plaintiff's motion for partial summary judgment (Doc. 59) is **DENIED** as moot.

**B.     PwC's Motion for Summary Judgment**

Defendant PwC seeks summary judgment on plaintiff's claim that its decision to terminate plaintiff's benefits under the non-LTD plan at Price WaterhouseCoopers, which included 6 months leave of absence benefits after his termination was unreasonable. The non-LTD plan at PwC provided that once plaintiff was no longer employed, his entitlement to benefits under the Non-LTD plan extended for only 6 months. PwC is the administrator of the non-LTD plan, and is given "exclusive discretionary authority to interpret the Plan. . ." The plan, provides, in pertinent part, that leaves of absence can only be extended for a period of six months, and that in combination with plaintiff's loss of his employment under the LTD plan, he lost his eligibility to participate in non-LTD plans at PwC. (Exhibit E to doc. 54). This plan provides that "if LTD benefits under the Firm's LTD plan terminate, even temporarily, the six-month maximum would apply." *Id.*

8

Again, this Court will apply an arbitrary and capricious standard in determining whether the actions of the plan administrator were made in good faith. Given that the LTD benefits had ended, and plaintiff's employment status had terminated with PwC, the Court **FINDS** that the record supports a finding that defendant PwC did not act arbitrarily or capriciously in terminating plaintiff's 6 month leave of absence benefits.[1]

Accordingly, the Court **GRANTS** defendant PricewaterhouseCoopers' motion for summary judgment (Doc. 53) and judgment is entered in favor of defendant Price WaterhouseCoopers and against plaintiff, Charles Jenkins.

## **CONCLUSION**

Accordingly, the Court **GRANTS** defendants' motion for summary judgment (Doc. 50) and judgment is entered in favor of defendants Long Term Disability Plan (LTD) and Connecticut General Life Insurance Company (CGLIC), and against plaintiff, Charles Jenkins on all claims.

The Court **DENIES** plaintiff's motion for partial summary judgment (Doc. 48) on all grounds. Defendants' motion to strike the declaration of Dr. DeBrofsky attached to plaintiff's motion for partial summary judgment (Doc. 59) is **DENIED** as moot.

The Court **GRANTS** defendant PricewaterhouseCoopers' motion for summary judgment (Doc. 53) and judgment is entered in favor of defendant PricewaterhouseCoopers and against

---

[1]Plaintiff makes a weak argument that this termination of benefits somehow violates ERISA's 180 day appeal time. However, in order to be in violation of that provision, the Leave of Absence policy would have to qualify as an ERISA plan. To be a plan covered by ERISA, the plan must be more than an internal company policy, but must have the status of an "employee welfare benefit plan," or a "welfare plan." *Diak v. Dwyer, Costello & Knox,* 33 F.3d 809, 812 (7th Cir. 1994). This 6 month leave of absence appears to be more of a policy, than a plan covered by the provisions of ERISA. Indeed, the ability to receive such a leave of absence is directly tied to a qualified ERISA benefit plan, the LTD. Therefore, the Court rejects plaintiff's claim that the 6 month leave of absence termination violated ERISA.

plaintiff, Charles Jenkins.

Plaintiff's motion to stay filing response (Doc. 56) is **DENIED.**

The Clerk of the Court is **DIRECTED** to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

**DATED: March 31, 2008**

                                                s/ **WILLIAM D. STIEHL**
                                                        **District Judge**